Thank you. Be ready, Your Honors. Okay. Go ahead, please. Thank you, Your Honors, and may it please the Court. Addison Bennett of Perkins Coie for the petitioner. I'd like to reserve three minutes for rebuttal. This case first asks whether the 30-day deadline of 8 U.S.C. section 1252b1 displaces the strong Irwin presumption in favor of equitable tolling. It does not. The statute provides a bare 30-day deadline and nothing more. It lacks any textual features that courts have found to rebut the strong Irwin presumption. The Sixth Circuit reached this conclusion weeks ago in Oxlodge-Perez, and this Court should follow. The key facts for equitable tolling are undisputed. The petitioner was detained, suffering from debilitating vision loss requiring surgery, and did not understand the BIA's English-only notice. But still, he diligently contacted representatives from the DOJ's legal orientation program, and he signed his petition the same day that those representatives could meet with him. Once the Court reaches the merits, those merits are straightforward. For one, this Court's decisions, including Parada and Flores-Molina, require a remand because the I.J. entirely failed to assess the country conditions reports. For another, the I.J. fell well short of his affirmative duty to develop the record for the Pro Se Cat claim. Basing his entire decision for the violence-based claim on a single question and a single answer about a shooting near Petitioner's family home. So I'll begin, if I may, with the strong presumption in favor of equitable tolling. The key question is... Can we go to the Cat claim? So it... It doesn't appear from Mr. Maldonado-Rosas' testimony that he fears persecution or torture or any kind of harm. It just seems to be that he has very serious, unfortunate health conditions, and he just doesn't think he can afford treatment in Mexico. Your Honor, I don't think that's consistent with his application. If you look at AR 258, that is where he submits his first application for relief to the I.J. And the first thing he says is, in that box A, at AR 258, my sister's mother-in-law lives next door to my sister in Ectopec, and around four or five years ago, her house was shot at. That, at least facially, raises relevant facts for a Cat claim. And the I.J. really should have asked at least a few more questions. Do you know who committed the shooting? Did the police investigate? Has your family been targeted for violence in the past? Do you have any reason to think that there might be some... Well, okay, let's look at what the questions were by the I.J. Do you know why that their house was shot up? No, I wouldn't be able to tell you. So if you have to go back to Mexico, are you afraid of anyone in particular? I wouldn't be afraid of going back to Mexico because I have nothing to do back there. The only thing is that since they performed dialysis here for me. He says, and this is what I fear about going back to Mexico because back in Mexico you have to pay first in order to be seen, and then they will see you because if you don't pay first, they won't look at you. He's talking about his diabetes, his high blood pressure, and his vision issues. So, you know, you would agree that the case law says if the testimony of the petitioner basically doesn't establish the silent or withholding, then the I.J. doesn't have to do anything more. Well, Judge Koh, I agree with the way you framed the question, but I think it's important to look at how the I.J. actually framed his decision. It's two sentences in the oral decision, and it's, Petitioner does not know why the shooting occurred. Therefore, I find it based on general violence. And that why, that is the basis for the agency's decision, and that is what's before you. And our submission is that the I.J. came to that conclusion far too hastily because do you know why, first of all, just sort of on its own, does not ask all of the relevant questions that give the petitioner an ample opportunity to develop the narrative to present his cat claim? Things like the questions I was just mentioning earlier. Has your family been targeted in the past? Did the police investigate? Do you have any reason to believe that the government might have been involved? So I think it just, it, the government. But the I.J. did ask, as Judge Koh just recited, are you afraid of anyone in particular? I mean, it's true, I suppose, that the I.J. could drill down and ask all of these specific questions, but why should that be required when he gave an opportunity, the I.J. gave an opportunity to say, you know, well, I'm afraid of the government. Your Honor, I understand that concern. I really do. But I think, first of all, we should look again at how the I.J. actually framed and based his decision. That is the decision before you. And the decision was petitioner does not know why it occurred, therefore there is no cat claim here. Additionally, and I think this Court's precedents bear this out, when you have a pro se noncitizen in front of you, it makes it especially important for the I.J. not to move on so hastily, not to ask one question without explaining the import. And so it's just evident looking at the record that the petitioner here truly did not understand what was going on, truly did not understand the claim that he had to make. AR-258, he does his best, and he makes out a facially plausible violence-based claim. The I.J. really should have just asked a couple of more questions that get to the legal standard for what a torture claim is. If the I.J. had done that, we would be looking at a very different record. I think part of the problem here is the I.J. says, based on my colloquy with the petitioner in front of me, I find this to be based on general violence. Well, that really puts the cart before the horse. I mean, if I look at his notice of appeal of the I.J. decision, he says, I'm appealing because I am very sick. I'm on dialysis. The immigration judge was wrong to deny my applications because in Mexico I cannot get work on account of my age and illness. I have high blood pressure, cataracts, and diabetes. So I don't know. There are countless parts in the record. Same thing, his BIA brief. I'm appealing my case in the matter of my health condition that I am right now. I've been facing numerous barriers to accessing health care and managing severe chronic illness. I mean, all of the health situation is clearly deeply unfortunate. But I'm struggling to see a torture claim. Your Honor, I understand. So I think it's maybe important to sort of understand what our argument is. And it's not that substantial evidence on this record compels the conclusion that my client will be tortured. It's that the I.J. did not perform the correct procedures first to develop an appropriate record to make that finding. And that really is what this court's precedents require when this court's precedents will require a remand. So as to the BIA brief and the BIA submission, I think, Your Honor, it's important to recognize that the BIA affirmed on the merits, which brought the I.J.'s decision directly in front of this court for review. So to the extent Your Honor is raising sort of administrative exhaustion concerns, I don't believe there's much room left for that because the BIA addressed on the merits the I.J.'s decision, which addressed both the violence and the health-based concerns. Now, in terms of what my client was able to marshal before the BIA, a lot of sort of the same facts that might explain the thinness of his submission, frankly, are relevant as well to why he's entitled to equitable tolling. He is a pro se petitioner who was detained, suffering from emergent health problems requiring corrective surgery to fix his vision, and was diligently attempting to understand the papers that were sent to him, understand the process that he had to go through, but frankly fell short in some respects because of the facts of his case and the specific circumstances that he was in. So that is really why this court will give pro se submissions their most liberal construction. It really, at the end of the day, is not what were the words that the pro se petitioner used in front of the agency. It's did the I.J., based on what was submitted to the I.J., AR 258 makes out the violence-based claim and the health-based claim. Did the I.J. appropriately develop the record before making the decision? And that's why I would appreciate the opportunity to discuss the importance of the country conditions for just a moment, if I may. The country conditions are not just procedure in vacuo. This court many times has said that it is essential to consider the substance of the country conditions reports in the record before making a determination. And the reason for that is because the country conditions reports explain to the I.J. what questions are relevant, what is going on in the country that should frame my questioning to the non-citizen in front of me. So without some prior consideration of the substance of those reports, the questioning to the non-citizen applying for relief might not make much sense. I think that's what happened here. It might be too hasty. I think that's what happened here. And what's your position? The I.J. can never say I considered all the evidence in the record. Is that your position? I think on these facts, Your Honor, that is. It's Flores Molina, Parada, Diaz-Reynoso. I mean, they specifically reject the kinds of catch-all statements that the I.J. offered here. But doesn't there have to be something highly probative or potentially dispositive in that country conditions evidence? So if Your Honor is— Require the I.J. to specifically address it or mention it. Your Honor, I think Diaz-Reynoso is my best case on this point, and it says that sort of the first question you ask before getting into that kind of concern is, is there any indication—that's the quote from Diaz-Reynoso—that the I.J. considered the substance of those reports? And so in a case like Cruz, which the government cites, the court looked at a statement by the I.J. that did not specifically cite the country conditions reports, but discussed and elaborated on—that's another quote from Cruz—elaborated on the substance of those reports. So the error that was presented to the court in Cruz was essentially a failure to cite that report. Cruz rejected that. And what is it specifically in the country conditions evidence that you think is relevant to the petitioner's claim here? Yes, Your Honor. So as to the violence claim, it's AR-193, which speaks of acts of homicide, torture, kidnapping, extortion, and a long list that the government sometimes prosecutes and investigates. So is it your position if somebody—let's say if somebody tortures a neighbor who lives next to my sister, that gives me a torture claim? Because that is what happened, right? The house that was shot up was not a sister's house. It was the neighbor who lived next to the sister. So that gives me a torture claim? Not on its own, Your Honor. I agree there needs to be at the end of the line, of course, some nexus to the petitioner's actual claim. And I think that really was the IJ's error here, was failing to offer my client an opportunity to make that nexus. Do you know why the shooting occurred? No. We're moving on entirely. We're never returning to that line of inquiry. So Your Honor is asking reasonable questions. Is there any connection to your family? You have to show particularity in terms of the torture claim. And he didn't suffer torture. His family didn't suffer torture. And we have a shot fired at a neighbor's house. So how can you survive a particularity analysis? Judge Thomas, I think, again, it was the IJ's duty to ask these, frankly, reasonable questions before making that conclusion. My client was pro se before the agency and did not have an opportunity to offer facts like that. The country conditions reports, Judge Koh, do at least raise the possibility that shootings like this are committed by the government or at least acquiesced to by the government, not investigated. Judge Thomas, if there had been some nexus with my client's personal situation or his family, the IJ really should have asked a couple of questions about that. These are reasonable questions. To simply ignore the country conditions reports, which speak specifically to this concern, to base the entire decision off of do you know why the shooting occurred, which is not all of the relevant questions to a CAT claim. It's under the specific circumstances of my client's evident confusion, his pro se status, his language barrier, and basically all of the considerations taken together, the IJ did have an affirmative duty to do more. And I'd like to reserve the balance, if I may. Let me ask you one quick question. I had one fact question. You're referring to the Department of Justice legal orientation program as separate from the Northwest Immigrants Rights Project. And I'm wondering if in this instance, they're actually the same thing. Your Honor, my understanding is that that program is essentially an opportunity to allow nonprofit groups like that into the detention centers to provide those services. So the record doesn't fully explain whether it's the exact same people. The record does, of course, when he actually submitted his petition, it does seem to be signed by someone from an organization like that. So what the record does tell you is that my client, as soon as he received that paper, immediately attempted to make an appointment with that program. And the representatives from that program were not able to meet with him until January, until his deadline had passed. I think it is most relevant to my client's diligence, Your Honor. It shows that he made the best use that he possibly could of the resources available to him. And unfortunately, that just that caused a short delay in his ability to timely file. Because there are two things, the FedEx label, where he sent, says, you know, legal orientation program, LOP, Northwest Immigrants Rights Project, is the sender to the Ninth Circuit. So sending his petition for review and then his untimely filing document says that it's a template of the Northwest Immigrant Rights Project. So I'm just wondering, for your equitable tolling, it could actually be helpful to you to say he had continuity of representation. Because otherwise, I got confused because it made it sound like you're saying, oh, no, you know, in November of 24, he reached out to somebody totally separate, the Department of Justice, whatever that legal orientation program, LOP. But he was actually reaching out to the same people who have helped him all along, which is this Northwest Immigrants Rights Project. I think the record probably does support that, and it does support the entitlement to equitable tolling. The same people who had helped him at the first step, the BIA appeal, he said those would be the reasonable people to reach out to when he finally received and, you know, had the opportunity to file a petition here. So I agree, Your Honor, that probably does ultimately help us, and I appreciate the chance to clarify that. If I may, Your Honor, I would request just a minute or two for rebuttal, if at all possible. That's fine. Thank you. We'll give you two minutes for rebuttal. Thank you. Good morning, Your Honors. I'm Spencer Shuchard for the United States. May it please the Court, the government's position in this case is that 1252B1 is a mandatory rule, meaning it is not amenable to equitable tolling. Petitioner missed his chance to file a petition for review, so the Court's only recourse is to deny the petition for review. That said, because it's not jurisdictional, the easiest way, the cleanest way to dispose of this case is just to assume that equitable tolling is placed, assume that you can reach the merits and do so, because as you've been discussing, there is no merit to petitioner's underlying CAC claim. So I'll start there. Wait. Oh, I'm sorry. So you don't want us to reach whether equitable tolling applies to this statute? I don't think you need to. Just assume it? I'm sorry. Assume without deciding. I think that's the easiest way to go here. Oh, okay. Can you answer that just fact question, just is the Department of Justice Legal Orientation Program in this case the Northwest Immigrant Rights Project? They are separate entities. I don't know if one was connected to the other. It appears that they were working together. I noticed the same thing that you did, but I don't have any insider information on that. Right. I'm assuming they're a contractor or subcontractor getting funds from the Department of Justice, probably EOIR. But that's fine. The Northwest Immigrant – I'm not sure. NWIRP, I see them a lot in these pro bono cases. Okay. I don't know if they're an NGO that gets access. Some courts allow access to a lot of pro bono counsel and some don't. I'm not sure if this is one of those. Okay. Can I ask you one more question? So you're saying assume without deciding equitable tolling applies. Are you also telling us to assume that Mr. Maldonado Rosas established equitable tolling and then reach the merits? Are you asking us to make two assumptions and then reach the merits? I think that's the easiest way to go. I mean, I would argue that he did not prove up his case for equitable tolling. And I can argue, as I did in the brief, that equitable tolling doesn't apply. Right, but because you think the CAT claim fails, you're saying that just the easiest way to dispose of it would be to assume the first two. I'm trying to give your honors the quickest way to the door on this one.  And plus this issue has been argued, I think, in a combination of six cases in a panel back on May 20th. And I know that they are holding some cases for that outcome. And these arguments in terms of equitable tolling are the same as those arguments. Right. So I don't know. I mean, it seems to me our choices are, one, wait for the other panel because they have priority to see if they issued a precedential opinion. Or two, follow your path and just assume without deciding all of it and get to the merits. And you're advocating option two. Option two. That's correct. All right. Thank you. Okay. So petitioner needed to prove up that he was more likely than not to be tortured in his home country and that the torture would be intentionally malicious. That's reviewed for substantial evidence. So there is a high bar for petitioner to clear in terms of his proof and there is a low bar for the agency to clear in terms of its review. And he asked, he was asked what he feared. He said two things. One was general crime. That's foreclosed in the Ninth Circuit. That's Delgado-Ortiz. You can't base a torture claim on that. Number two was his lack, his fear of lack of medical treatment, which as the IJ did make a finding on, that's not a claim of a fear of torture. What do you make of counsel's argument that given that petitioner was pro se that there was a duty to sort of drill down and ask questions that go directly to the elements of a torture claim rather than stopping at the question, is there anyone specific that you fear? What do you make of that? The department agrees with petitioner that IJs have a duty to help pro se petitioners develop the record for themselves because they can't do that. The IJ did that here. He even specifically said I'm going to help you do that. But I think it's very telling that petitioner and pro bono counsel have never actually come up with a question that how they would have answered. We don't know what more he would have said. It seemed when asked about the incident, he didn't know what else he would have said. There's nothing to this incident other than a few years ago somebody shot at a house that was near a relative. So you're saying that even if we found the questions deficient, petitioner needs to tell us what he would have said had the questions been what he wanted. I think that's true, although I'm definitely not arguing that the record is deficient here. And I would rely on Cruz for that. These general statements of I reviewed the whole record are sufficient unless the petitioner is able to point to something relevant that would have been missed. And he's never done that. He asked the IJ to look more into the record, but in his brief, he just cites the country conditions evidence as a whole. When he says the IJ should have asked more questions, he never says what he would have said in answer to those questions. I think that this case fairly easily clears the substantial evidence standard of review. Petitioner did also assert that he had made a facially plausible violence-based claim in his asylum application. That's not correct. That's not something that the agency ever found. And all he said was he sort of vaguely detailed this incident and where someone he knew was nearby when there was a shooting years ago. That's not going to be enough to even get you a prima facie case. He needed to do much more, and it doesn't seem like he had much more that he could do. I think while I have you, I mean, that's all I have to say about the merits of the case. There's not a lot to say about it. But I did kind of want to bring to the Court's attention something with respect to the equitable tolling statutory interpretation claim. The government is content to stand on its brief with respect to the applicability of equitable tolling, but I do want to address the Sixth Circuit case, Oxley-Perez, and the SCOTUS case, Enbridge v. Nestle, and how they affect the FRAP argument specifically. So FRAP 26 says that it applies by its terms to any statute where the time computation method is not explicit. That's the INA. 26B2 says that the time to file a petition for review cannot be extended. The Supreme Court has already told us in NutraCeuticals that that is a clear intent to compel rigorous enforcement of the deadline. The pushback the government typically gets on this argument is that NutraCeuticals was a case that was about the federal rules, where there is no equitable tolling, and that NutraCeuticals has never been explicitly extended to the statutory context. But Enbridge changed that. Enbridge applied NutraCeuticals three different ways. For the proposition that non-jurisdictional rules can still be mandatory and therefore not subject to equitable tolling. For the proposition that commands aimed at litigants are the appropriate context for finding that a limit is mandatory. Can you address, I know you've asked us to assume it, but why don't you address whether the petitioner here established equitable tolling? Petitioner here, I think we would assume that the court would use the Holling framework. That's typically what this circuit uses for equitable tolling claims. So he had two things to prove. He had to show that some extraordinary circumstance prevented him from filing, and he had to show diligence. He needs both. But what happened was he hasn't shown any evidence that anything prevented him from filing, let alone an extraordinary circumstance. Everything that he claims stood in his way from filing his petition for review was true when he was competently representing himself before the agency. His incarceration, his dialysis, his vision problems, his need for surgery, and his illiteracy, those were all true while he was in front of the agency. And he even admits that he had the bond order timely. He said he has it in mid-November. All we know is that he made an appointment with something called the Legal Orientation Program, and then he had surgery after the time had run. So we don't actually have any evidence of things getting worse for him. We don't know what the significance even is of the Legal Orientation Program because we don't know how much he had been relying on that up to that point. We're not sure. He doesn't tell us any of that. This is he needs to prove that he was prevented from doing something, not just that it was an extraordinary circumstance. It has to be something that stood in his way. He didn't prove that. And we don't think that he showed diligence either because he had that order in his hand. And he sat on it for six weeks waiting for someone to tell him what to do, according to him. Again, there's no evidence in favor of this. If we're going to talk about how to prove these out, we should at least talk about the administrability of this court, kind of evaluating evidence for itself without a record. That's typically not something that it is permitted to do in agency cases by statute. And keep in mind, there was an avenue for him to follow. I mentioned this in the brief, but he could have filed a motion to reopen and reissue the decision, which would have started the PFR clock for him. He doesn't want to do that because he feels like it might be a bit too difficult. And I think that's something that should give the court pause. He thinks it might be easier if he does it before you, having you adjudicate all these claims. One thing I noticed in going through most of the cases that petitioner cites where equitable tolling was found applicable to the statutes is that the body adjudicating whether the equitable tolling threshold had been met was not a court of appeals. It's a tax court, a bankruptcy court, an agency, a district court. The only court, the only case that I saw where a court of appeals was adjudicating that motion was the Sixth Circuit case now, Oxley-Perez. And I think the court should be careful in following down that path. To get back to what I was saying about Enbridge, Supreme Court in Enbridge. So, nutraceuticals has now been extended to the statutory interpretation realm. Nutraceuticals is fair game when interpreting statutes. It's not just limited to the federal rules anymore. And that needs to be reckoned with if this court is going to decide the equitable tolling applicability here. Because 26B directly applies. It prevents late filings of petitions for review. And it doesn't matter that the presumption of equitable tolling doesn't apply to the federal rules. The rules apply to the INA. And that is the context for determining whether the presumption is overcome here. And that's where the Sixth Circuit case falls down. Do you clarify, were you arguing that Lambert eliminated the presumption of equitable tolling? No. Is that a no? Because that's what it sounded like you were arguing in your brief. It doesn't sound like what you're arguing today. But there might be a delta there. There might be. This has been kind of an emerging thing as Riley has kind of spiraled for us. So, it's not the government's position that Lambert abrogated equitable tolling? No. The presumption of equitable tolling applies in this case. So, that was maybe a little bit overzealousness in your brief. It was, you know, reflective of an evolving position most likely. Okay. What we're saying is that Lambert is the overwhelming evidence, the clear intent to compel rigorous enforcement of the deadline, in this case, because of the federal rules and how the interplay between that and 1252B1. I think if the court is going to address the applicability here, it has to reconcile Neutraceuticals, Enbridge, and FRAP 26B2 in a way that the Sixth Circuit did not. And I'm content to rest on the brief there unless Your Honor had more questions. No, I actually have one question. What if, you know, if we don't address it, it's not even an issue, but it's just a question. What if the mandatory claim processing rule is just mandatory when equitable tolling is not invoked? Could that be sort of a middle ground here? Could you explain that to me a little further? I'm not following. As long as equitable, well, yeah, maybe it doesn't make sense. It's just if someone doesn't invoke equitable tolling, then in that instance, you could say you have to meet this 30-day deadline and it's mandatory. I'm just thinking if there's some sort of middle grounds here. But if we're not going to reach the legal question of whether equitable tolling applies, this would all be moot. I think I understand what you're saying, but I think that gets it backwards. The mandatory command comes from Congress, right, because they're the one that drafted the statute. I don't think a person can invoke a rule and make it mandatory. Oh, I think he got disconnected. All right. Good morning and welcome back. Back by popular demand. Let's keep going. You didn't miss anything when you went off screen. We just took a break. I think you have like a minute and 30 seconds left if there's anything more you'd like to say. I think I finished my thought to my own satisfaction. But I think this is an opportune moment just to thank the court for entertaining these remote motions. It makes a big deal. It makes a big difference to myself and my colleagues. And my appreciation to Mr. Benton as well for taking on this case on behalf of the petitioner. Thank you, Your Honor. Yes, thank you. All right. Rebuttal. We'll give you two minutes. Thank you, Your Honors. I'll make one point on equitable tolling, if I may, and two very quick points on the merits. On equitable tolling, I think my friend is offering a pretty radical reading of Enbridge. Enbridge did not change the factors that are supposed to be applied in the equitable tolling inquiry. It just applied those factors to a different statute. But crucially, Enbridge is not a petition for review case. It does not implicate Rule 26. Harrow and Bockler, decisions of the Supreme Court that post-date Enbridge, are petition for review cases. In neither case did the Supreme Court base its decision at all on Rule 26. In fact, if equitable tolling is not available because of Rule 26, then equitable tolling is never available in a case where there is a petition for review from the agency to the circuit. That is clearly not the rule. That would be inconsistent with Harrow and Bockler. On the merits. Before you leave equitable tolling, we do have our other panel who has priority on this case. And you've worked up, put a substantial effort into your equitable tolling argument. Now the government says, well, we'll let them win on this one by assumption and get to the merits. Do you have a position? Well, Your Honor, I guess I'll take the win. I understand that the court's general orders probably do give priority to the first case. Of course, if it's published. Yeah, if it's published. So that's, of course, why we've gone through the full briefing and argument on it. We don't know whether that panel will reach the issue at all and whether they will publish. And I'll just very briefly address the merits, if I may. If the court is concerned about the development of the record issue, I really would like to commend the court's attention to Flores Molina, Parada, and Diaz-Reynoso. In all three of those cases, they were failure to consider the country conditions report cases. Those really are the exact same record as this case, the exact same statement by an IJ. I've considered all the evidence, whether specifically referred to or not. In all three of those published decisions, that exact statement was found to be insufficient and required a remand. If you do want to reach the duty to develop the record, my friend has conceded that that duty exists. So the question really is, was one question, why did the shooting occur, and basing the decision on that single answer, was that sufficient? You don't need to reach that if you find the country conditions error a sufficient basis for a remand. But if you do, we would submit that there was an independent error on that ground as well. Thank you very much, Your Honors. Thank you. All right. I'd like to thank, on behalf of the panel, both counsel for your extremely helpful arguments and briefs. Thank you.
judges: THOMAS, KOH, THOMAS